OPINION OF THE COURT
Marianne O. Mizel, J.
Clinton L.C. filed a petition on October 23, 2001, alleging that he is the father of a child, Jeremy S., born out of wedlock to Lisa B. on December 23, 1992. Joseph S. has been presumed to be Jeremy’s father and had filed a paternity petition on Feb *212 ruary 14, 1994, alleging himself to be Jeremy’s father. That petition had been dismissed for failure to appear and prosecute because Mr. S. had not appeared in court on June 1, 1994. Mr. S. had informed the court by telephone call on May 23, 1994, as noted in the file, that he was in a rehabilitation facility and would not be able to appear in court before June 6, 1994. Mr. S. did not refile his petition. As Jeremy’s presumed father, Joseph S. had received notice of and appeared for several neglect and custody proceedings involving Ms. B. and Jeremy.
The initial appearance for Mr. C.’s paternity petition was conducted December 5, 2001 in front of Hearing Examiner John K. Beisel. The question of whether Mr. S. had been formally determined to be Jeremy’s father was raised and the matter was adjourned for Mr. S. to be given notice and an opportunity to appear. Hearing Examiner Beisel appointed Christopher Burns, Esq., as Law Guardian for Jeremy and Mr. Burns raised equitable estoppel issues. The matter was then referred to this Judge as a contested paternity proceeding (Family Ct Act § 439 [a]).
Mr. C. has requested assigned counsel to represent him in these proceedings. He has submitted the required financial affidavit to apply for assigned counsel and meets the economic guidelines for assignment of counsel. However, Family Court Act § 262 (a) (viii) provides for assigned counsel only to respondents in paternity proceedings, and Mr. C. is the petitioner in this case. This would make him ineligible to receive assigned counsel except that Family Court Act § 262 (b) provides that "a judge may assign counsel to represent any adult in a proceeding under this act if he determines that such assignment of counsel is mandated by the constitution of the state of New York or of the United States, and includes such determination in the order assigning counsel.” For the reasons which follow, this court determines that Mr. C. is constitutionally entitled to counsel.
The court is informed that no father is identified on Jeremy’s birth certificate. There has been no judicial determination from this court as to the identity of Jeremy’s father, although Mr. S. has frequently appeared in this court in that role. Jeremy is nine years old and this court assumes that Mr. S. has been identified to him as his father. From the information presented in court peripheral to the other proceedings, the court is unsure as to what extent Mr. S. has participated in Jeremy’s life and resolution of the equitable estoppel issues is very much an unknown. The court will have to make a careful inquiry into *213 Jeremy’s relations with the various figures in his life. In his short life, Jeremy has been removed by the Department of Social Services from his mother’s care. Two successive legal guardians have died. He is presently in the legal custody of cousins, but that has been a difficult living situation for him, resulting in his residence at Four Winds. He is now in the temporary custody of an uncle, who has a pending petition for Jeremy’s custody. Not only are there equitable estoppel questions connected to paternity, but there are also looming questions as to stability and familiarity regarding custody and what rights or obligations any adjudicated father would have in Jeremy’s life. These issues will require careful consideration for the court to navigate, let alone be argued by unrepresented litigants.
When the statute determining eligibility for assigned counsel was enacted by Laws of 1975 (ch 682), it did not contain a provision for assigning counsel to either the petitioner or the respondent in paternity proceedings. The right of a father to bring a paternity proceeding was not established until added by Laws of 1976 (ch 665, § 6) (Family Ct Act § 522). The Governor’s Memorandum regarding this bill states that it was passed in response to the contradictory opinions expressed in Stanley v Illinois (405 US 645 [1972]) and Matter of Malpica-Orsini (36 NY2d 568 [1975]) regarding the rights to be afforded to fathers of out-of-wedlock children (Governor’s Mem approving L 1976, ch 665, 1976 McKinney’s Session Laws of NY, at 2442). The paternity respondent’s right to assigned counsel was added by Laws of 1978 (ch 456). There were no executive, legislative, or judicial memoranda exploring the rationale for restricting representation only to respondents. Douglas J. Besharov in his Practice Commentaries to Family Court Act § 262 (McKinney’s Cons Laws of NY, Book 29-A, Family Ct Act § 262, at 312 [1999]) states
“The only significant exceptions to the provision of counsel to indigent persons are: (1) petitioners in Article 5 Paternity Proceedings, presumably because they may obtain counsel fees from the respondent under Fam.Ct.Act § 536 (1998) [sic] and because they often are represented by counsel for public assistance agencies * * * .”
When the Family Court Act was created in 1962 (L 1962, ch 686), section 536 provided “Once an order of filiation is made, the court in its discretion may allow counsel fees to the attorney for the mother, if she is unable to pay such counsel *214 fees.” Underlying this provision is the implied supposition that the petitioner was always going to be the child’s mother or the public assistance agencies seeking reimbursement for assistance paid on behalf of the child concerned. It was not until Laws of 1981 (ch 300, § 4 [eff Sept. 1, 1981]) that the statute was amended to allow counsel fees to be paid to “the prevailing party,” whether the mother or the father. That chapter specifically states that its purpose was to eliminate “unconstitutional sex-based distinctions.” However, by conditioning the award of counsel fees upon the issuance of an order of filiation, the counsel fee statute presumes that the “prevailing party” is the petitioner[1] and not a respondent who is found not to be the child’s father.[2] Accordingly, the only persons who can receive counsel fees under this statute are petitioners who successfully establish a paternity relationship.
However, utilizing section 536 to deny petitioners access to assigned counsel overlooks the situation, as here, where the respondent has no funds from which to reimburse the petitioner and the issues presented are complex. Ms. B. has been involved in several proceedings in this court over the last 10 years and each time has either requested and received assigned counsel or has chosen to represent herself. She has never not qualified for assigned counsel. Mr. C., in seeking to establish his paternity, is seeking to establish parental rights which, once established, are to be protected by assigned counsel under Family Court Act § 262. Establishing the entitlement to parental rights should be no less constitutionally protected than defending against diminution of those rights, especially when, as here, there are legal challenges to be addressed before blood tests can even be ordered.
Accordingly, this court declares that Mr. C. is constitutionally entitled to assigned counsel as a petitioner in a paternity proceeding where he is seeking to establish his paternity of the subject child and the assistance of counsel is necessary to enable him to prosecute the action. The court hereby appoints Stuart L. Borrero, Esq., to represent Mr. C.
[Portions of opinion omitted for purposes of publication.]

. Article 5 is a proceeding to establish paternity (Family Ct Act § 511) and is not a proceeding to declare a petitioner not to be the father of the child.

. Case law has declared that article 5 cannot be used to establish maternity of a child. (See, e.g., Matter of Andres A. v Judith N., 156 Misc 2d 65 [Fam Ct, Queens County 1992].)